# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 30, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**RANDY E. LEWIS,**
**Claimant Below, Petitioner**

**vs.)    No.  15-1007** (BOR Appeal No. 2050414)
               (Claim No. 2012031073)

**PEPSI-COLA METROPOLITAN BOTTLING COMPANY, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Randy E. Lewis, by Robert L. Stultz, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Pepsi-Cola Metropolitan Bottling Company, Inc., by Bradley K. Shafer, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 30, 2015, in which the Board affirmed the April 9, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's September 29, 2014, decision which denied the addition of cervical herniation with radiculopathy as a compensable condition. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lewis was injured on April 1, 2012, when he was pulling on a pallet jack loaded with soda and felt pain in his neck and left arm. The claim was accepted as compensable for a cervical spine strain. An April 21, 2012, cervical MRI revealed a left paracentral disc protrusion at C6-C7 with a smaller component demonstrating inferior extrusion than on the previous examination of June 7, 2009, as well as suspected compromise of the left C8 nerve root, which was also seen on the previous MRI. Mr. Lewis had conservative treatment consisting of physical therapy and cervical epidural steroid injections. He was able to return to work with no restrictions and does not appear to have had any treatment for the cervical spine after July 17, 2012.

1

Joseph E. Grady, M.D., performed an independent medical evaluation on March 21, 2013. It was noted that Mr. Lewis had returned to his job as a merchandiser the previous July. Mr. Lewis reported discomfort in his neck, occasional sharp pain in his left upper chest, and intermittent radiation into his left arm. Dr. Grady diagnosed cervical myofascial sprain with reported left-sided C6-C7 disc protrusion on MRI and left shoulder myofascial sprain. He found no signs of radiculopathy. In Dr. Grady's opinion, Mr. Lewis had reached maximum medical improvement. He assessed 6% whole person impairment.

On February 18, 2014, Mr. Lewis slipped on ice and fell getting out of his car while he was working. He landed on his right hip. It appears this claim was accepted as compensable for groin sprain and right hip pain. On March 10, 2014, David Lynch, M.D., noted Mr. Lewis's neck and both hands were bothering him. In Dr. Lynch's opinion, this was due to the aggravation of an old neck injury. An MRI performed on April 5, 2014, revealed a broad-based osteophyte complex with superimposed disc herniation at the C6-C7 level on the left as well as left lateral recess stenosis with impingement on the transiting left cervical nerve roots. The overall appearance was noted to be similar to that of the April 21, 2012, MRI. On May 22, 2014, Dr. Lynch listed a diagnosis of neck sprain and strain.

Sanford Emery, M.D., treated Mr. Lewis on June 23, 2014, when he noted he had last evaluated Mr. Lewis in 2012 for a left-sided disc herniation at C6-C7 that was causing radiculopathy. Dr. Emery noted Mr. Lewis had a recurrence of the left arm symptoms with new right arm symptoms after falling on February 18, 2014. He noted the MRI findings in 2014 were unchanged from the 2012 findings. He recommended conservative treatment, including cervical epidural steroid injections. Dr. Emery opined the cervical spine condition should be covered since it was covered in 2012 and wrote a letter to the claims administrator stating as much.

ChuanFang Jin, M.D., performed an independent medical evaluation on July 7, 2014. Dr. Jin diagnosed degenerative cervical spine disease, unrelated to the injury. She noted Mr. Lewis did not report any symptoms with his neck immediately following the February 18, 2014, fall. She found that the 2012 MRI and the 2014 MRI showed multilevel degenerative changes that were essentially similar and that degenerative cervical spine disease is a progressive and chronic illness. In her opinion, there was insufficient medical evidence to indicate an injury to the cervical spine after the February 18, 2014, fall. It is common to have symptoms of pre-existing degenerative cervical spine disease with or without noticeable triggers. In her opinion, the February 18, 2014, fall did not change or alter the pathology of the cervical spine. Therefore, there was no aggravation of the cervical spine condition.

On September 29, 2014, the claims administrator denied Mr. Lewis's request to add additional cervical conditions as compensable for the April 1, 2012, claim. The Office of Judges affirmed the claims administrator's decision on April 9, 2015. The Office of Judges relied on the medical opinion of Dr. Jin in determining there was no aggravation of the April 1, 2012, injury. It found that while Dr. Emery felt that the cervical spine condition was work-related, he did not explain how the herniated disc was caused by the work injury in 2012 as the 2009 MRI indicated the presence of the herniation. Dr. Emery did not explain any differences in findings in the 2009, 2012, or 2014 MRIs. There was no worsening of the condition documented by the MRI findings.

Therefore, there was not an aggravation of the condition. The Office of Judges also found that Dr. Jin determined Mr. Lewis did not immediately complain of neck symptoms following the February 18, 2014, fall. It found that Dr. Jin determined that the MRIs revealed degenerative changes and that Mr. Lewis's symptoms were a progression of the degenerative changes.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges. After review, we agree with the reasoning of the Office of Judges and the conclusions of the Board of Review. Mr. Lewis had reached maximum medical improvement, stopped treatment, and returned to work with no restrictions as of July of 2013. He continued to have sporadic symptoms but nothing that necessitated treatment until after the fall on February 18, 2014. The evidence does not support Mr. Lewis's assertion that his neck symptoms in 2014 were due to an aggravation of the April 1, 2012, injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: September 30, 2016**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**
Chief Justice Menis E. Ketchum